UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RUBY MAES,

    Plaintiff,

        v.                          Case No.: 1:12-CV-01250 KG/WPL

CITY OF ESPAÑOLA, a municipal
corporation; LEO MONTOYA,
former Chief of Police for the City
of Española; and CHRISTIAN LOPEZ,
former Lieutenant with the City of
Española Police Department,

    Defendants.

MEMORANDUM OPINION AND ORDER

On January 28, 2014, Defendants filed a Motion to Reconsider. (Doc. 42). On February 5, 2014, Plaintiff responded, and on February 19, 2014, Defendants filed a reply. (Docs. 45 and 47). Having reviewed the briefs and relevant law, the Court finds that the Motion to Reconsider should be denied.

*A. Background*

On October 10, 2012, Plaintiff filed a Complaint containing two Counts: Count I, alleging violations of the Americans with Disabilities Act (ADA) for refusal to accommodate a disability and wrongful discharge; and Count II, alleging violations of the New Mexico Human Rights Act (NMHRA) for refusal to accommodate a handicap and wrongful termination. (Doc. 1-1). On June 12, 2013, Defendants filed a Motion for Summary Judgment on both Counts in Plaintiff's Complaint. (Doc. 27). Having considered the briefs related to the Motion for Summary Judgment, on January 28, 2014, the Court entered a Memorandum Opinion and Order (MOO) denying Defendants' Motion for Summary Judgment. (Doc. 41).

In their Motion to Reconsider, Defendants request that the Court reverse its MOO and enter summary judgment in Defendants' favor on both Counts in Plaintiff's Complaint. Defendants make three arguments in support of their Motion to Reconsider.[1] First, Defendants argue that Plaintiff is not disabled under the ADA because she fails to provide evidence that her insomnia significantly impacts her ability to sleep. Second, Defendants contend that, even if Plaintiff is disabled under the ADA, Plaintiff did not inform Defendants that she could never work a graveyard shift and, therefore, Defendants did not make an adverse employment decision when they required her to work a graveyard shift. Finally, Defendants argue that Plaintiff voluntarily quit her job, and thus, cannot bring a claim for constructive discharge.

*B. Standard of Review*

The Federal Rules of Civil Procedure do not recognize a motion to reconsider. Therefore, the Court must construe a motion to reconsider in one of two ways. *See Hawkins v. Evans*, 64 F.3d 543, 546 (10th Cir. 1995). If the motion is filed within twenty-eight[2] days of the district court's entry of judgment, it is treated as Fed. R. Civ. P. 59(e) motion to alter or amend the judgment. *See id*. When it is filed more than twenty-eight days after entry of judgment, it is treated as a Fed. R. Civ. P. 60(b) motion for relief from judgment. *See id*. In this case, Defendants' Motion to Reconsider was filed less than twenty-eight days after the MOO. Therefore, the Court construes Defendants' motion as one seeking relief under Rule 59(e).

---

[1] Defendants do not make arguments specific to Plaintiff's claims under the NMHRA. However, the legal standards under the ADA and the NMHRA are identical. *See* MOO at 13. The Court, therefore, construes Defendants' ADA arguments as encompassing their arguments regarding the NMHRA claims.

[2] Effective December 1, 2009, Rule 59 was amended to allow up to twenty-eight days to file a motion to alter or amend a judgment. Fed. R. Civ. P. 59(e).

Appropriate grounds for a Rule 59(e) motion "include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). A Rule 59(e) motion is appropriate where the court has misapprehended the facts, a party's position, or the controlling law. *Id.* Rule 59(e) may not be used to re-litigate old matters, or raise arguments or present evidence that could have been raised prior to judgment. S*ee Steele v. Young*, 11 F.3d 1518, 1520 n.1 (10th Cir. 1993).The district court is vested with considerable discretion in determining whether to grant or deny a Rule 59(e) motion. *Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997).

*III. Discussion*

    *1.  Whether Plaintiff provides adequate evidence that she is disabled under the ADA*

Defendants argue that Plaintiff is not disabled under the ADA because she fails to provide evidence that her insomnia significantly impacts her ability to sleep. *See* 42 U.S.C. § 12102(1)(A) (2000) (amended 2008) (person has disability if she "has a physical or mental impairment that substantially limits one or more ... major life activities."). Defendants cite two Tenth Circuit Court of Appeals cases to argue that Plaintiff failed to provide evidence that her insomnia significantly impaired her ability to sleep compared to the average person. *See Allen v. SouthCrest Hosp.*, 455 Fed. App'x 827, 832-33 (10th Cir. 2011) ("[T]he ADA plaintiff is obligated to present evidence that will permit comparison of the effects of his sleep disturbances to those experienced by the average person."); *Johnson v. Weld Cnty., Colo.* 594 F.3d 1202, 1218 n.10 (10th Cir. 2010) ("[T]hough [the plaintiff] states that she has suffered from nightmares and sleep disorders, she doesn't offer any evidence, as she must, suggesting how her difficulties sleeping compare to those

of the average person in the general population (many of whom, of course, have nightmares or trouble sleeping).").

Defendants' contentions are not well taken. First, Plaintiff states that, "I am friends with many people and none of them have migraine headaches and insomnia as severe as I have experienced when I work or in other ways stay awake past midnight." (Doc. 29-5) at 3. Second, Dr. Murray Ryan, Plaintiff's physician, diagnosed Plaintiff as suffering from "severe insomnia" and "chronic insomnia." (Doc. 28-1) at 24 and (Doc. 29-1) at 1. The Court finds that Plaintiff's statement and Dr. Ryan's medical diagnoses provide sufficient evidence to compare Plaintiff's insomnia to that of the average person and that it is self-evident that the average person does not suffer from "severe" or "chronic" insomnia. Additionally, as explained in the MOO, Congress stated in the ADA Amendments Act of 2008 that "the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis" and "usually will not require scientific, medical, or statistical analysis." Pub. L. No. 110–325 § 2(b)(5); 29 C.F.R. § 1630.2(j)(v). The Court, therefore, rules that a reasonable jury could conclude that, viewing the evidence in a light most favorable to Plaintiff, Plaintiff's "severe" and "chronic" insomnia significantly restricted her ability to sleep compared to the average person and, therefore, is a disabled person under the ADA.

    2.   *Whether Defendants knew Plaintiff needed adequate accommodation*

Defendants next argue that, even if disabled, Plaintiff did not notify Defendants that she could never work past 12:00 a.m., and, therefore, Defendants did not discriminate against her by requiring her to work past 12:00 a.m. *See* 42 U.S.C. § 12112(b)(5)(A) (Under ADA, discrimination may include "not making reasonable accommodations to the <u>known</u> physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or

employee.") (emphasis added). Defendants, without citing to any authority, state that "[t]he employer need not accommodate a limitation which is not medically supported." (Doc. 42) at 10. Defendants further claim that Plaintiff's inability to work a single graveyard shift is not medically supported because Dr. Ryan "does not state that she could never work a graveyard shift nor does he state that it would be dangerous to her health for her to work an occasional graveyard shift." *Id.* at 4.

As discussed in the MOO, Dr. Ryan advised Plaintiff against working "any sustained period of graveyard shifts." (Doc. 28-1) at 24. On November 16, 2010, Dr. Ryan wrote a medical note to Plaintiff's supervisor stating, "Ruby Maes suffers from chronic insomnia and severe migraines. She would not tolerate full/graveyard type shift work." (Doc. 29-1) at 1. On numerous occasions Plaintiff told her supervisors about her medical conditions. On March 1, 2011, Plaintiff wrote a letter to Defendant Lopez informing him that she could not work past 12:00 a.m. because of her extreme insomnia and migraine headaches and attached a note from Dr. Ryan to that effect. (Doc. 29-2) at 7. On April 7, 2011, Plaintiff spoke with both Defendants Lopez and Montoya and informed them that she could not work past 12:00 a.m. and requested to be excused from work.

The Court, therefore, rules that a reasonable jury could conclude that, viewing the evidence in a light most favorable to Plaintiff, Defendants knew that Plaintiff was unable to work past 12:00 a.m. *See Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 450 (6th Cir. 1999) ("An employer has notice of the employee's disability when the employee tells the employer that he is disabled.") (citation omitted).

   3. *Whether Plaintiff was constructively discharged*

Finally, Defendants argue that Plaintiff voluntarily quit her job, thereby barring a claim for constructive discharge. *See Exum v. U.S. Olympic Comm.,* 389 F.3d 1130, 1135 (10th Cir. 2004)

("[A] plaintiff who voluntarily resigns cannot claim that he or she was constructively discharged."). Defendants provide no new evidence or arguments regarding Plaintiff's claim for constructive discharge. As discussed in the MOO, on April 7, 2011, a correctional officer called Plaintiff to cover a co-worker's graveyard shift. That evening, Plaintiff discussed her medical conditions and her inability to work past 12:00 a.m. with both her immediate supervisor, Defendant Lopez, and Defendant Lopez's supervisor, Defendant Montoya. Both Defendants refused to excuse Plaintiff before 12:00 a.m. Defendants refusal to excuse Plaintiff from working past 12:00 a.m. placed her in a situation where she had to decide between her job and her health. A reasonable jury could find that reasonable persons faced with this decision would view the working conditions so intolerable that they would feel like they had no other choice but to quit. *See MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1281 (10th Cir. 2005) (citation omitted) (Constructive discharge occurs when "an employer deliberately makes or allows the employee's working conditions to become so intolerable that the employee has no other choice but to quit."). Numerous courts have held similarly. *See Blickle v. Illinois Dep't of Children & Family Servs.*, 2013 WL 2467651 (N.D. Ill.) (slip op.); *Sturz v. Wisconsin Department of Corrections*, 642 F.Supp.2d 881, 891 (W.D.Wis. 2009); *Miller v. AT & T Network Sys.*, 722 F. Supp. 633, 639 (D. Or. 1989) *aff'd and adopted*, 915 F.2d 1404 (9th Cir. 1990).

Defendants fail to present evidence that the Court misapprehended the facts, a party's position, or the controlling law. Defendants' motion to reconsider, therefore, will be denied.

IT IS ORDERED that Defendants' Motion to Reconsider (Doc. 42) is denied.

_____
UNITED STATES DISTRICT JUDGE